## SEYBOLDT v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 4166.   Decided September 10, 1925.   (239 P. 476.)

CRIMINAL LAW—SENTENCE OF DEATH CANNOT BE EXECUTED FOURTEEN DAYS AFTER DATE OF SENTENCE. Sentence of death, to be executed 14 days after day of sentence, imposed after appeal had failed and after commutation of sentence had been denied, *held* error, not being in accordance with Comp. Laws 1917, § 9171, notwithstanding section 9181, both sections relating to execution of judgment of death.

Certiorari by Ralph W. Seyboldt to review an order of the District Court of Salt Lake County, and *Hon. M. L. Ritchie,* Judge thereof, sentencing petitioner to be executed.

ORDER ANNULLED AND SET ASIDE, with directions.

*H. C. Allen* and *Ray T. Elsmore,* both of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., for defendants.

FRICK, J.

This is an original application to this court for a writ of certiorari. The facts alleged in the application, briefly stated, are: That on April 1, 1924, plaintiff was convicted in the district court of Salt Lake county of the crime of murder in the first degree without any recommendation by the jury; that thereafter, on the 5th day of that month, he was duly sentenced to be executed on June 4, 1924; that plaintiff appealed from the judgment of conviction and sentence to this court, and by reason of said appeal execution of the sentence was stayed; that on April 1, 1925, the judgment and sentence of the district court was duly affirmed by

16 C. J. pp. 1379.

this court, and the lower court was directed to fix a date for execution of the sentence, 65 Utah 204 (236 P. 225) ; that on April 25, 1925, plaintiff was again sentenced by the district court to be executed on May 29, 1925; that plaintiff then applied to the Governor of this state for a reprieve, which was granted, after which application was made to the board of pardons of this state for commutation of the death sentence to imprisonment in the state prison for life; that on August 22, 1925, plaintiff's application for commutation was denied, and on August 28, 1925, plaintiff was again taken before the district court, and by that court was resentenced to be executed on September 11, 1925. After the last sentence, to wit, on September 10, 1925, plaintiff filed this application.

In view that the sentence was about to be executed the Attorney General of this state graciously waived the issuance of a writ, and also waived notice and time to plead, and appeared on behalf of defendants. He admitted all the facts hereinbefore stated, but orally demurred to plaintiff's application upon the ground that the facts alleged did not entitle plaintiff to the relief prayed for or to any relief. After argument by respective counsel the application was submitted to this court.

In view that the sentence was to be executed on the following day, to wit, on September 11, 1925, this court entered judgment forthwith annulling and setting aside the last sentence or order fixing a date for the execution of plaintiff for the reasons hereinafter stated.

At the hearing of the application, the principal contention on behalf of plaintiff was to the effect that the district court had failed to comply with the provisions of our statute in fixing the time for the execution of the original sentence, and hence had exceeded its power or jurisdiction in the premises. Upon the other hand, the Attorney General contended that the statute leaves the matter of fixing a date or time of execution entirely within the discretion of the district court, and hence plaintiff's application should be denied. The only question involved in this proceeding, therefore, is

which one of the foregoing views should prevail. Our statute (Comp. Laws Utah 1917, § 9171) reads:

"When judgment of death is rendered a warrant signed by the judge and attested by the clerk, under the seal of the court, must be drawn and delivered to the sheriff. It must state the conviction and judgment and appoint a day on which the judgment is to be executed, which must not be less than thirty nor more than sixty days from the time of the judgment."

There is no controversy respecting the meaning of the foregoing section, and, as appears from the statement of facts, the district court complied with its provisions in sentencing plaintiff after his conviction, and again followed the statute after the judgment was affirmed by this court and plaintiff was resentenced as directed by this court—that is, when the district court fixed a new date on which plaintiff should be executed. After plaintiff's application for commutation of sentence was denied, however, the district court refused to comply with the provisions of section 9171, supra, respecting the 30 days' limitation, but allowed only 14 days' time between the date of sentence and the date of execution. The action of the court was based on the provisions of section 9181, which reads:

"If, for any reason, a judgment of death shall not have been executed, and it remains in force, the court in which the conviction shall have been had, on the application of the county attorney, must order the defendant to be brought before it, or if he is at large a warrant for his apprehension may be issued. Upon the defendant being brought before the court, it must inquire into the facts, and if no legal reasons exist against the execution of the judgment, must make an order that the sheriff execute the judgment at a specified time. The officer must execute the judgment accordingly."

After careful consideration and reflection we have arrived at the conclusion that, although the 30 and 60 day limitations were not repeated in section 9181, it nevertheless was the intention of the Legislature that an execution should not take place until after the expiration of 30 days from the date on which the court fixes the time for the execution; and further, that in fixing the time that execution shall take place the court cannot exceed the 60-day period fixed by the

statute. It is a matter of general knowledge that there are in fact very few if any cases where the death penalty is imposed that are not appealed to this court, or where an application for commutation of the death sentence is not made and acted upon. In all of such cases, therefore, the limitations provided for in section 9171 are of no effect whatever. We must assume that the Legislature, the same as the courts, was fully aware of the fact that judgments imposing the death penalty are practically always appealed from, and that such appeals entirely eliminate the provisions of section 9171. In view of that we must assume that the Legislature did not intend to provide limitations which in the ordinary course of practice would have no effect, but that it intended to provide for limitations which would be effective in all cases. If we are correct in the foregoing assumption, then there is no course open except to apply the limitations whenever sentence of death is actually and not only potentially to be imposed. To hold otherwise is to annul the limitations altogether.

In this connection it may perhaps not be improper to state that during the time the writer has been a member of this court there have been more than 25 convictions for murder in the first degree, all of which were appealed to this court, and in all of which proceedings similar to those that took place in this case were had. It is true that reprieves were not granted in all of the cases. That was so, however, because it was not necessary to do so, since the applications for commutation of sentence were considered before the date fixed for execution. In all of the cases, however, the courts were required to fix a new date for the execution of the sentence originally imposed, as was done in this case, and in all of those cases the 30 and 60 day limitations were observed by the courts on the subsequent resentences or the subsequent fixing of new dates. We thus have had a practical construction of sections 9171 and 9181 for a period of about 25 years, during all of which time the limitations were observed in fixing the time for the execution of a sentence.

Entirely apart, however, from the fact that the courts have always observed the limitations, we think the Legisla-

Certiorari

ture intended that the 30 and 60 day limitations should apply in all cases and under all circumstances. If the Legislature had provided only for the 30-day limitation there might perhaps be some force to the contention that the limitation was intended to apply only to the original sentence. The Legislature felt impelled, however, to control the discretion of the district courts both as to the time that should elapse before the execution should take place and also as to the time within which the execution must occur. Evidently the Legislature considered 30 days a reasonable time within which an accused could prepare himself for the event, and, upon the other hand, assumed that the execution should take place within a reasonable time, namely, 60 days. Moreover, the Legislature no doubt desired to relieve the courts of the many and pressing importunities for longer time in case no limit were fixed in the statute. In addition to that, if it were held that the limitations did not apply in case the original sentence is suspended, then there would be absolutely no limitation respecting the time within which an execution must take place.

The Attorney General concedes that if it be held that the district court may fix a period less than 30 days, it may also exceed the statutory period of 60 days. Indeed, he admits that if it be once held that the courts may disregard the statutory limitations then there is no limit whatever. Under such a holding one court might allow one day, while another might fix the date for execution months or even years in the future. There would thus be no uniformity of action nor any control over the courts' discretion. All would be left to the discretion or whim of the particular judge called to fix the time for execution. If the Legislature deemed it proper and wise to control the courts in limiting the time within which an execution must take place when the sentence is first imposed, is it not reasonable to assume that that body also deemed it proper and wise to control the courts when a new date is to be fixed? It certainly is just as proper to control the discretion of the courts in one instance as it is in the other. The mere fact that the limitations are not repeated in

section 9181 is not controlling. It is not even of great importance. Section 9181 relates to the same subject covered by section 9171 where the limitations are expressed, and hence it was not necessary that the limitations be repeated in section 9181. In addition to that, practically the same reasons for imposing the limitations and for controlling the discretion of the courts in fixing the time exist after an appeal to the Supreme Court and the affirmance of the judgment as in case where there is no such appeal and the execution takes place upon the original sentence.

The order of the district court of Salt Lake county fixing the time as of September 11, 1925, is annulled and set aside, and the said court is directed to fix a new date for the execution of the original sentence within the time limitations provided in Comp. Laws Utah 1917, § 9171.

GIDEON, C. J., and THURMAN and CHERRY, JJ., concur.

STRAUP, J. I fully concur. I wish, however, to add this: As seen in section 9171, a warrant must be signed by the judge and attested by the clerk and delivered to the sheriff. That is the sheriff's warrant and authority to execute the judgment. In that warrant must be stated the conviction and judgment, and a day appointed not less than 30 nor more than 60 days from the date of the judgment on which the judgment is to be executed. Such a warrant was signed, attested, and delivered. Because of the proceedings recited in the opinion of Mr. Justice Frick, that warrant became functus officio. To legally execute the judgment it thus became necessary to issue a new warrant. A new warrant was issued. I think it was required to contain all that was required to be in the first warrant which ceased to have validity or power. True, in it could not be stated an appointed time not less than 30 nor more than 60 days from the date of the judgment, for that time, because of the stated proceedings, had long passel. However, it is not reasonable to suppose that it was the intention of the Legislature to restrict and

Certiorari

within stated limitations to prescribe an appointed time of the execution when the first warrant is signed and delivered, but when the execution of the judgment is thereafter stayed beyond 60 days from the date of the judgment, as it here was, and it hence became necessary to issue, sign, and deliver a new warrant, that the court was authorized to fix or appoint any time however short or long for the execution of the judgment. I think such an interpretation does not reflect the legislative intent of the two sections when considered together as they must be. To look alone to the literal language of section 9181, that the court "must make an order that the sheriff execute the judgment at a specified time" and from it alone reach the conclusion that since no time is there prescribed the court in its discretion may fix any time however short or long, is, as I think, to exclude other language and phrases of the statute with respect to the subject, and to stick to the bark and not to the pith of it. In the interpretation or construction of statutes the controlling factor, of course, is to ascertain the intention and meaning of the Legislature. Its intention constitutes the law. Primarily that intention is determined from the language of the statute itself, and where the language is plain and unambiguous and conveys a clear and definite meaning the statute must be given that meaning; but when the intention of the statute is plainly discernible from its provisions, that intention is as obligatory as the letter of the statute, and will prevail over the strict letter of it. A thing which is within the letter of the statute is, nevertheless, not within the statute unless it be within the intention of the Legislature. This is but another way of saying that every statute should be expounded, not according to the letter, but to the meaning of it as gathered from all of its provisions. So considering the statute, I think the court exceeded its jurisdiction, and that its order in such respect should be annulled.