STATE, RESPONDENT, *v.* VETTERE, APPELLANT.

(No. 6,013.)

(Submitted September 15, 1926. Decided September 22, 1926.)

[249 Pac. 666.]

*Criminal Law—Murder—Inquisition into Sanity of Defendant Before and After Sentence of Death—Statutes—Procedure.*

Murder—Inquisition into Sanity of Defendant Before and After Sentence of Death—Procedure.
1. Where, after judgment of death has been pronounced upon a defendant, there is good reason to suppose that he has become insane, the sheriff, with the concurrence of the judge of the court by which the judgment was rendered, may summon a jury to inquire into the question of his sanity in conformity with sections 12095 *et seq.*, Revised Codes of 1921; but where during the course of the trial or before judgment of conviction is pronounced a doubt arises as to his mental condition, the procedure outlined by sections 12214 to 12219 is controlling.

Same—Inquisition into Sanity of Defendant—Invalidity of Statutes—Who may not Question.
2. On appeal from an order of the trial court declining to summon a special jury to inquire into the sanity of one under sentence of death, defendant's counsel whose application for the order was based upon the provisions of sections 12214 *et seq., supra,* on the theory that sections 12095 and following sections applicable to the situation were invalid, was not in a position to attack the validity of the latter sections, under the rule that one whose interests have not been or are not about to be prejudicially affected by an alleged invalid statute cannot question its constitutionality.

---

1. Remedy of one convicted of crime while insane, see note in **10** A. L. R. 213. See, also, 14 R. C. L. 606.
2. See 6 R. C. L. 89.

[77 Mont. 66.]

Same—Doubt as to Defendant's Sanity—Determination Matter of Judicial Discretion.

3. An application to have the sanity of a defendant convicted of murder determined under sections 12214 *et seq.*, Revised Codes of 1921, is addressed to judicial discretion, the doubt mentioned in section 12214 as to his sanity which must exist, being one arising in the mind of the trial judge, not necessarily presented by the assertion of defendant's counsel that his client is insane, and unless the record shows error on his part, its action will be affirmed.

[1] Criminal Law, 16 **C. J.**, sec. 3036, p. 1284, n. 62; sec. 3038, p. 1284, n. 71; sec. 3135, p. 1332, n. 29, 30; sec. 3145, p. 1338, n. 23, 25.
[2] Constitutional Law, 12 **C. J.**, sec. 177, p. 760, n. 57; sec. 185, p. 766, n. 2.
[3] Courts, 15 **C. J.**, sec. 397, p. 977, n. 40. Criminal Law, 16 **C. J.**, sec. 3038, p. 1284, n. 73; p. 1285, n. 78, 79 New

*Appeals from District Court, Silver Bow County; J. J. Lynch, Judge.*

Tony Vettere, after the affirmance of judgment of conviction of murder in the first degree, was brought before the district court for inquiry as to whether legal reasons existed against the execution of the judgment, and appeals from an order directing its execution and from an order denying his motion to correct the minutes of the court. Affirmed.

*Mr. M. S. Galasso,* for Appellant, submitted a brief, and argued the cause orally.

Under sections 12101, 12213 and 12214, Revised Codes of 1921, the court was required to consider counsel's suggestion of defendant's insanity. (*United States* v. *Chisolm,* 149 Fed. 284; *People* v. *Kirby,* 15 Cal. App. 264, 114 Pac. 794; *Bulger* v. *People,* 61 Colo. 187, 156 Pac. 800.)

The court in the instant case refused to interrogate and examine the defendant for the reason that section 12095 divested it of any and all jurisdiction to determine the question of defendant's sanity. Our contention is that sections 12095–12098 are violative of section 1, Article VI, of

3. Test of present insanity which will prevent trial for crime or punishment after conviction, see note in 3 **A. L. R.** 94. See, also, 14 **R. C. L.** 606.

the Constitution, in that in so far as they attempt to deprive the court of the right to determine this judicial question are null and void, for that determination is a right inherent in the judiciary and cannot be abrogated or limited by statute. (*State ex rel. Schneider* v. *Cunningham,* 39 Mont. 165, 101 Pac. 962; *O'Neil* v. *Yellowstone Irrigation District,* 44 Mont. 492, 505, 121 Pac. 283; *State ex rel. Smith* v. *District Court,* 50 Mont. 134, 140, 145 Pac. 721.) Apart from the constitutionality of these sections, we respectfully submit that they are so ambiguous and deficient in their provisions that they cannot be given any force or effect or made operative.

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. T. E. Downey,* County Attorney of Silver Bow County, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

Chapter 44 of Part II of the Penal Code (which embraces sections 12213 to 12219) provides the procedure to be followed when a doubt arises as to the sanity of a defendant at three specified stages of a criminal case, to-wit: 1. When the action is- called for trial; 2. At any time during the trial; 3. When the defendant is brought up for judgment on conviction. This court has commented on the application of these sections in two cases: *State* v. *Peterson,* 24 Mont. 81, 60 Pac. 809, and *State* v. *Howard,* 30 Mont. 518, 77 Pac. 50. From these decisions two things are plain: 1. That the procedure above authorized is applicable only before judgment on conviction. 2. That it rests in the sound discretion of the trial court to decide whether or not an insanity investigation should be had.

It is equally plain that the procedure provided by sections 12094 to 12098 is the only method by which the insanity of a defendant, occurring after judgment of death, can be inquired into. The procedure authorized by these sections is common in other states. California, for instance, has identical provisions (secs. 1220–1224, Kerr's Cyc. Codes 1920); also, Idaho, Nevada and Utah. (13 Standard Encyclopedia of Procedure,

p. 555; *Ferguson* v. *Martineau,* 115 Ark. 317, Ann. Cas. 1916E, 421, 171 S. W. 472.)

The argument of appellant that sections 12095 *et seq.* are unconstitutional, wholly overlooks the words "with the concurrence of the judge of the court" appearing in said section. This language clearly indicates judicial action by the judge, as well as executive action by the sheriff. Also, in this connection the case of *State ex rel. Bottomly* v. *District Court,* 73 Mont. 541, 237 Pac. 525, holds that section 1 of Article IV of the Constitution of Montana, construed in the light of conditions existing at the time of its adoption and for sixty-one years since the organization of the territory of Montana, does not preclude the legislative branch of the government from providing for a suspension of execution in a criminal case, despite the sole pardoning power granted the governor by section 9 of Article VII of the Constitution. By parity of reasoning and ignoring the words "with the concurrence of the judge" in section 12095, it would appear to be equally competent for the legislature to authorize the sheriff, in whose custody a condemned criminal is held pending his execution, to conduct an inquiry into his sanity, notwithstanding that such an inquiry might partake, in part, of a judicial nature.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

After this court affirmed the judgment in this cause (*State* v. *Vettere,* 76 Mont. 574, 248 Pac. 179), the defendant, after notice to his counsel, was brought into the district court for further proceedings, agreeably to section 12101, Rev. Codes 1921, which provides: "If for any reason a judgment of death has not been executed, and it remains in force, the court in which the conviction was had, on the application of the county attorney, must order the defendant to be brought before it, or if he is at large, a warrant for his apprehension may be issued. Upon the defendant being brought before the court, it must inquire into the facts, and if no legal reasons exist

against the execution of the judgment, must make an order that the sheriff execute the judgment at a specified time. The sheriff must execute the judgment accordingly.''

The court inquired whether any legal reason existed against the execution of the judgment; upon which Mr. Galasso, counsel for the defendant, addressed the court, saying that he had not seen the defendant, before his arrival in court that morning, for several weeks; that the defendant appeared to him ''insane and irrational; that he had sat by the defendant in court for several minutes and the defendant spoke incoherently on many different subjects''; that while counsel was sitting in a chair in front of defendant the defendant came to him and told counsel his name was not Tony Vettere but Guiseppe Antonio Malvetti; that defendant did not appear to know the nature of the proceeding there taking place. Counsel therefore requested the court to examine and interrogate the defendant as to his mental condition. The court minutes recite that Mr. Galasso ''requested the court to examine the defendant herein to determine whether or not he is sane or insane at this time, and the court refused to do so. The court thereupon inquired into the facts and it appearing therefrom that no legal reason exists against the execution of the judgment made and entered herein by the court on March 18, 1926, the sheriff of Silver Bow county, Montana, is hereby ordered and directed to execute the judgment'' at a time fixed.

Thereafter counsel moved the court to correct its minutes to show the representations which he had made as a basis for requesting the court to inquire into the mental condition of the defendant. These representations, set forth in substance above, were presented by counsel's affidavit filed in support of the motion. This motion the court by order denied. Thereupon the defendant appealed from the order directing the sheriff of Silver Bow county to execute the judgment, and from the order denying the defendant's motion to correct the minutes of the court.

A person cannot be tried, adjudged to punishment or punished for a public offense while he is insane. (Sec. 12213, Rev. Codes 1921.)

The Code provides one course of procedure when a doubt [1] arises as to the sanity of a defendant before judgment, and another when the doubt arises after judgment of death. The course to be followed when an action is called for trial, or at any time during the trial, or when the defendant is brought up for judgment on conviction, is prescribed in sections 12214 and 12219, inclusive, Chapter 44, Revised Codes of 1921. The court in such case must order the question as to the sanity of the defendant to be submitted to a jury which must be drawn and selected as in other cases and the trial or the pronouncement of judgment must be suspended until the question is determined by the jury. (Sec. 12214.)

But after judgment of death has been pronounced no judge, court, or officer, other than the governor, can suspend the execution of judgment, except the sheriff, as provided in sections 12095 to 12100, inclusive, Revised Codes of 1921, unless an appeal be taken. (Sec. 12094, Rev. Codes 1921.)

Section 12095 provides that if, after judgment of death, there is good reason to suppose that the defendant has become insane the sheriff of the county, with the concurrence of the judge of the court by which the judgment was rendered, may summon from the list of jurors selected for the year a jury of twelve persons to inquire into the supposed insanity and must give immediate notice thereof to the county attorney of the county. The county attorney must attend the inquisition, and may produce witnesses before the jury. (Sec. 12096.)

A certificate of the inquisition must be signed by the jurors and the sheriff, and filed with the clerk of the court in which the conviction was had. (Sec. 12097.)

If it is found by the inquisition that the defendant is sane, the sheriff must execute the judgment; but if it is found that he is insane, the sheriff must suspend the execution of the judgment until he receives a warrant from the governor or

from the judge of the court by which the judgment was rendered directing the execution of the judgment. If the inquisition finds that the defendant is insane, the sheriff must immediately transmit it to the governor, who may, when the defendant becomes sane, issue a warrant appointing a day for the execution of the judgment. (Sec. 12098.)

Counsel for the defendant. did not attempt to obtain relief under 12095 and the succeeding sections. His reason for not doing so, he says, is that sections 12095 and 12096 are unconstitutional. He insists that it was the duty of the court, when the matter was called to its attention to proceed under the provisions of section 12213 *et seq.*

The defendant is not in a position to urge the unconstitu- [2] tionality of sections 12095 and 12096. These sections have not been invoked to his prejudice, nor operated in any way to his disadvantage. One will not be heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by its operation. (*Thomas v. City of Missoula,* 70 Mont. 478, 226 Pac. 213; *Barth v. Pock,* 51 Mont. 418, 155 Pac. 282; *Spratt v. Helena P. T. Co.,* 37 Mont. 60, 94 Pac. 631.)

Were it to be conceded, which it is not, that counsel is [3] correct in his theory that sections 12095 and 12096 are unconstitutional, and that the provisions of sections 12213 and the following sections of Chapter 44 were applicable to the situation presented, still the defendant is no better off. An application of this sort is an appeal to judicial discretion. The doubt contemplated in section 12214 must be caused to exist in the mind of the presiding judge. There must be a doubt which appeals to the judicial conscience.

"Unless there is a doubt in the mind of the judge *a quo*— a doubt which he must legally determine as he would determine any other matter of grave import before him—he will not be warranted in calling a special jury to try the issue. Such is the purport of the authorities. (*State v. Peterson,* 24 Mont. 81, 60 Pac. 809, and cases cited; *People v. Hettick,* 126 Cal.

[77 Mont. 66.]

425, 58 Pac. 918; *People* v. *Geiger*, 116 Cal. 440, 48 Pac. 389.)''
(*State* v. *Howard*, 30 Mont. 518, 77 Pac. 50.)

The doubt is not presented, necessarily, by the mere assertion of defendant's counsel that his client is insane. (*State* **v.** *Peterson, supra.*)

In the instant case the record does not disclose error on part of the trial judge. He heard the testimony on the trial, observed the appearance and demeanor of the defendant during its progress, and again observed his appearance and demeanor when brought before the court upon the day the proceedings in question took place. We have no doubt that the careful presiding judge, from what he knew, heard and saw, did not entertain any doubt as to the defendant's sanity.

If it were assumed that the court was proceeding pursuant to section 12214 and had determined the showing made, as disclosed by this record, insufficient to invoke its judicial discretion, this court would affirm that position.

The court did not err in refusing to amend its minutes as requested by counsel.

The orders are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES STARK and MATTHEWS and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.